UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| DEBORAH S. LEECK, : | |
|           Plaintiff, : | |
| : | |
|     v. : | No. 5:22-cv-4634 |
| : | |
| LEHIGH VALLEY HEALTH : | |
| NETWORK, : | |
|           Defendant. : | |

_____

**O P I N I O N**
**Defendant's Motion to Dismiss, ECF No. 9 – Denied**

**Joseph F. Leeson, Jr.**                                                                       **June 23, 2023**
**United States District Judge**

**I.**       **INTRODUCTION**

This case involves a religious discrimination claim that Plaintiff Deborah Leeck filed against Defendant Lehigh Valley Health Network. Lehigh denied Leeck's requests for religious exemptions, first from Lehigh's COVID-19 vaccination mandate, and then from Lehigh's influenza vaccination mandate. Leeck filed a Second Amended Complaint with this Court alleging that Lehigh, in denying her religious exemption requests, violated Title VII of the Civil Rights Act of 1964 (Title VII) and the Pennsylvania Human Relations Act (PHRA). Lehigh moved to dismiss the case for failure to state a claim upon which relief can be granted, arguing that Leeck's beliefs are not religious in nature and therefore not protected under Title VII. The Court denies the motion to dismiss, because Leeck alleged sufficient facts to raise a right to relief above the speculative level. However, the Court dismisses sua sponte and without prejudice Leeck's PHRA claim, because she has not alleged that she exhausted her administrative remedies by first filing with the Pennsylvania Human Relations Commission (PHRC).

1

## II.     BACKGROUND

Leeck is a resident of Pennsylvania and a Christian. She has worked as a nurse for twelve years.

Lehigh is a business entity headquartered in Allentown, Pennsylvania, which operates hospitals and healthcare facilities.

Leeck was an employee of Lehigh for more than a decade. On August 24, 2021, Lehigh implemented a policy that required employees to be vaccinated for COVID-19, or otherwise submit a request for an exemption by September, 14, 2021.

Leeck submitted a request for an exemption in writing on September 10, 2021. Her submission contained a request for a religious exemption and a medical exemption. In addition to the exemption form provided by Lehigh, Leeck also attached the following: (1) a letter written by her pastor at Bethany United Methodist Church; (2) a letter written by an attorney; and (3) a letter written by Leeck. Def. Ex.1, ECF No. 9-2[1]; *see also* Pl. Ex., ECF No. 3.

On the exemption form, Leeck wrote that "God created my body in His image, and obtaining any chemical injections at this time and moving forward is not His plan for me." The pastor's letter states that "no one should be forced or coerced into receiving a chemical injection into . . . the Temple of the Holy Spirit" "[b]ecause the long-term effects of these vaccines are uncertain." Def. Ex.1, at 7. The attorney's letter states that Leeck "objects to vaccines of this nature" "[a]s a part of [Leeck's] religious beliefs." Def. Ex.1, at 8. Finally, Leeck's own letter articulates a number of reasons for her exemption, including the following: "my God-given sovereignty to reject this vaccine"; "my

---

[1] These documents are attached as exhibits to Lehigh's Motion, not the Second Amended Complaint. Normally, a court may consider only the complaint and documents attached to a complaint when adjudicating a motion to dismiss. However, the Court may consider these documents when adjudicating the Motion because they are referenced in the Second Amended Complaint and are essential to Leeck's claims. *See Fallon v. Mercy Cath. Med. Ctr. of Se. Pennsylvania*, 877 F.3d 487, 493 (3d Cir. 2017).

inalienable rights to life, liberty and the pursuit of happiness"; that the assumption that unvaccinated individuals are a threat to the health and safety of others is "politically biased" and only supported by "the unscientific 'motto' of the Biden administration"; that vaccines are "not necessary for operational reasons" to Lehigh; that the mandated vaccines have "not been FDA approved"; that Lehigh's actions "do not align . . . with the morals, beliefs, and guidance of my own personally-held beliefs, morals, and spiritual guidance"; that "my natural immunity . . . will serve me better than any vaccination"; and that a "chemical injection" may "deem my body impure in the eyes of the Lord." Def. Ex.1, at 9–13. Leeck also cited two scriptural references to the Bible in her letter: Deuteronomy 25:16 and 1 Corinthians 6:15.

On September 15, 2021, Lehigh's Deputy General Counsel informed Leeck that her request had been denied. On September 30, Leeck submitted a second request for exemption. In addition to the second exemption form, Leeck attached another letter. In this letter, she states, "I believe that life begins at the moment of conception, and abortion is murder"; "[t]he Covid-19 vaccine was developed using aborted human fetal cells"; therefore "the way [the Moderna and Pfizer vaccines] are manufactured and the efficacy tested is by the use of the aforementioned aborted fetal cells, and that goes against my deeply-held religious belief concerning abortion." She also states on the second exemption form that "I renewed my faith and belief in Jesus as my Lord and Savior in 2007." Leeck also cited additional scriptural references to the Bible: Psalm 127:3–5; Jeremiah 1:5; and Matthew 18:1–5. Lehigh issued written warnings to Leeck on October 1, 2021 and October 4, 2021 indicating that she was in violation of Lehigh's COVID-19 vaccination policy. And on October 25, 2021, Lehigh's Deputy General Counsel informed her that "[r]esubmissions are not considered."

In addition to mandating the COVID-19 vaccine, Lehigh also mandated that its employees either receive the influenza vaccine or request an exemption by November 1, 2021. Leeck submitted a request for religious exemption to the influenza vaccine on November 1, 2021. Leeck stated on the

provided form that she had "belonged to the United Methodist Church since 2007" and also attached a letter as an addendum.  In that letter she objects to "any/all vaccine requirements or mandates based on my sincerely held religious belief."  She offers the following argument in her letter: "My body is a temple for the Holy Spirit"; "It is a God-given task that I protect the physical integrity of my body against injections and harmful substances"; "Vaccines contain many ingredients that are considered contaminants from a biblical standpoint . . ."; therefore, "I have a deeply held belief that the flu vaccine violates."  Again, Leeck cites scripture from the Bible: 1 Corinthians 8:7 and 2 Corinthians 7:1.  Lehigh denied this request, too.

      Leeck filed for medical leave for a period of three months on November 4, 2021.  Lehigh approved her request for medical leave, and she was scheduled to return to work on January 27, 2022.  During her leave of absence, Leeck retained an attorney, who sent a letter to Lehigh's Deputy General Counsel on December 27, 2021 explaining Leeck's reasons for requesting a religious exemption to the vaccine mandate.  Leeck participated in the preparation of the letter, which reiterated a number of reasons for her exemption request, such as the idea that her body is a "temple of the Holy Spirit," and that she "has a faith-based objection to the use of aborted fetal cell lines."  The letter cites numerous scriptural verses, as well as her "belief in the power of prayer and natural remedies as the primary means of healing illnesses and injuries," and the fact that she now "considers to be sins" all the instances of her receiving vaccinations in the past insofar as "her religious experience and observance have become of greater prominence in her life since she suffered from COVID and credited her recovery to God."  The Deputy General Counsel for Lehigh responded, "I respectfully disagree with your interpretation of the law and your position."

      Leeck returned to Lehigh on January 27, 2022 and was cleared to return to work on January 28, 2022.  She continued to work until Lehigh terminated her employment on February 11, 2022 for her refusal to abide by the vaccine mandates.

Leeck filed a Charge of Discrimination with the Equal Opportunity Commission (EEOC) on October 27, 2021, and an amended Charge on October 29, 2021 alleging that Lehigh took unjust discriminatory actions against her. Both EEOC forms have a blank for "State or Local Agency" and both are filled in with "PENNSYLVANIA HUMAN RELATIONS COMISSION." But the Second Amended Complaint does not allege that Leeck filed a claim with the PHRC. Nor does Leeck allege that the PHRC gave her notice of a right to proceed with a private cause of action. The EEOC, however, issued a Notice of Right to Sue to Leeck on August, 22, 2022.

Leeck filed a Second Amended Complaint with this Court, alleging that Lehigh violated Title VII and the PHRA. Lehigh moved to dismiss the Second Amended Complaint for failing to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 12(b)(6). Leeck responded with a Brief in Opposition to Defendant's Motion.

### III.   LEGAL STANDARDS — Review of Applicable Law

Under Rule 12(b)(6), a defendant may make a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. County of Allegheny*, 515 F. 3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (cleaned up). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires

5

the reviewing court to draw on its judicial experience and common sense"). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (*citing Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F. 2d 1406, 1409 (3d Cir. 1991)). Additionally, when ruling on a motion to dismiss, the Court may "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputed authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F. 3d 223, 230 (3d Cir. 2010).

## IV. ANALYSIS

Leeck brings causes of action under Title VII and the PHRA.[2] Lehigh argues in its Motion that Leeck fails to state a claim, because she did not allege facts sufficient to show that her objections to the COVID-19 and influenza vaccines were religious in nature.

### A. Title VII

Before bringing a claim of employment discrimination under Title VII, an employee must first file a claim with the EEOC and receive a right-to-sue notice. *Federoff v. Geisinger Clinic*, 571 F. Supp. 3d 376, 385 (M.D. Pa. 2021). In this case, Leeck has made the appropriate filing with the EEOC and received a right-to-sue notice; therefore, she is permitted to bring a private right of action under Title VII. The relevant portion of Title VII states that,

> "[i]t shall be an unlawful employment practice for an employer . . . **(1)** to . . . discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion . . . or **(2)** to limit, segregate, or classify his employees . . . in any way which would deprive or tend to deprive any individual of employment

---

[2] Leeck brings her Title VII claim under three theories of liability: "failure to accommodate," "disparate treatment," and "retaliation." But if Leeck fails to plead that her adverse action was due to a sincerely held religious belief, then she fails to plead a cause of action for religious discrimination under Title VII pursuant to any of these theories of liability. *See Blackwell v. Lehigh Valley Health Network*, No. 5:22-CV-03360-JMG, 2023 WL 362392, at *9 n.8 (E.D. Pa. Jan. 23, 2023). Thus, since only the religious nature of her belief is currently at issue, the Court is not required to distinguish between theories of liability at this stage in the litigation.

opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . religion."

42 U.S.C.A § 2000e-2(a)(1)–(2). For the purposes of Title VII, the term "religion" includes "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." *Id.* at § 2000e(j); *see also* EEOC Compl. Man., § 2-II.A.1.c (noting that "the Commission defined 'religion'" with "broad coverage" to ensure "that the Commission will not have to determine what is or is not a religion").

Claims brought under Title VII require a burden shifting analysis. First, the burden is on the employee to make out a prima facie case of discrimination; that is, that (1) they held a sincere religious belief that conflicted with a job requirement, (2) they informed their employer of the conflict, and (3) they were disciplined for not complying with the conflicting job requirement. *Federoff,* 571 F. Supp. 3d at 384. If the employee establishes a prima facie case, then the burden shifts to the employer to show either that it offered an accommodation or that the requested accommodation would have caused an undue hardship. *Id.* at 385.

In this case, Lehigh contests only the first element in Leeck's prima facie discrimination claim, i.e., that "she holds a sincere religious belief that conflicts with a job requirement."

This first element, which is the only one at issue in this case, is often broken down into two smaller elements; that is, (1) is the belief sincerely held, and (2) is the belief religious in nature, in the claimant's scheme of things. *Africa v. Pennsylvania*, 662 F.2d 1025, 1029 (3d Cir. 1981) (citing *United States v. Seeger*, 380 U.S. 163, 185 (1965)). Lehigh does not contest whether Leeck's beliefs are *sincerely* held. It argues only that her beliefs are not *religious*. As result, the Court is faced with a single, narrow question: has Leeck alleged a religious belief for opposing the vaccines?

When determining whether a belief is religious in nature, the Supreme Court held in *Seeger* that "the test" is "whether a given belief that is sincere and meaningful occupies a place in the life of its possessor parallel to that filled by the orthodox belief in God of one who clearly qualifies for the exemption." *Seeger*, 380 U.S. at 166. The Supreme Court also narrowed this parallel-belief inquiry to explicitly exclude "those persons who ... decide on the basis of essentially political, sociological or economic considerations" and "those whose opposition ... stems from a 'merely personal moral code.'" *Id.* at 173. The "modern analysis" is a "definition by analogy" approach that refines and extends the parallel-belief inquiry whereby courts have "look(ed) to the familiar religions as models in order to ascertain, by comparison, whether the new set of ideas or beliefs is confronting the same concerns, or serving the same purposes." *Africa*, 662 F.2d at 1032 (cleaned up).

The Third Circuit has identified three "useful indicia" that help courts apply the "definition by analogy" process:

> First, a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters. Second, a religion is comprehensive in nature; it consists of a belief-system as opposed to an isolated teaching. Third, a religion often can be recognized by the presence of certain formal and external signs.

*Id*. To satisfy the "ultimate ideas criterion," a belief must deal with such things as "life and death, right and wrong, and good and evil" or "underlying theories of man's nature or his place in the Universe" *Id.* at 1033. (citations omitted). To satisfy the comprehensiveness criterion, a belief must be "something more than a number of isolated, unconnected ideas"; and ideas are not religious "merely because an individual alleges that his life is wholly governed by those ideas." *Id.* at 1035. The "structural characteristics" criterion requires "the presence of any formal, external, or surface signs that may be analogized to accepted religions," such as "formal services, ceremonial functions, the existence of clergy, structure and organization, efforts at propagation, [and] observance of holidays." *Id.* (cleaned up).

8

In this case, Leeck claims that she has "sincerely held Christian religious beliefs" and is a member of Bethany United Methodist Church.  Christian beliefs are what the *Seeger* parallel-belief test calls "orthodox belief in God." So, accepting Leeck's statements as true, it is clear that she holds a religious belief.  But it is not Leeck's Christian religious beliefs in general or her attendance at a Methodist church alone which conflicts with her job requirement.  Rather, it is her belief that "obtaining any chemical injections at this time . . . is not His plan for me" and her belief that "[i]t is a God-given task that I protect the physical integrity of my body against injections and harmful substances" that conflicts with her job requirement. Therefore, the court must determine whether these latter beliefs are religious in nature, or merely a mode or way of life based on purely secular considerations.

This question is similar to one posed in *Wisconsin v. Yoder* where the court faced the question of whether the Amish way of life – whose insulation from the world put the Amish at odds with a state compulsory education statute – was "inseparable" from and "interdependent" with the Christian beliefs of the Amish and, therefore, protected as free exercise of religion, or whether their insular way of life was "based on purely secular considerations" and should bend to the State's interest in educating its citizens:

> if the Amish asserted their claims because of their subjective evaluation and rejection of the contemporary secular values accepted by the majority, much as Thoreau rejected the social values of his time and isolated himself at Walden Pond, their claims would not rest on a religious basis. Thoreau's choice was philosophical and personal rather than religious, and such belief does not rise to the demands of the Religion Clauses.

406 U.S. 205, 216 (1972).[3]  The Supreme Court found that the Amish way of life was "not merely a matter of personal preference, but one of deep religious conviction, shared by an organized group,

---

[3] While *Yoder* addressed claims under the Free Exercise clause, and not Title VII, the Third Circuit has applied the same principles from the First Amendment context to the Title VII context to determine whether a belief is religious.  *See Ambrose v. Gabay Ent & Assocs., P.C.*, No. CIV.A. 12-5453, 2013 WL 4195387, at *3 n.6 (E.D. Pa. Aug. 15, 2013) ("The Third Circuit and other lower federal courts . . . have applied First Amendment principles to the Title VII context . . .).

and intimately related to daily living." *Id.* Such finding was also in part justified by the Amish insisting on a "literal interpretation of the Biblical injunction from the Epistle of Paul to the Romans, 'be not conformed to this world . . ..'" *Id; see also Fallon v. Mercy Cath. Med. Ctr. of Se. Pennsylvania*, 877 F.3d 487, 492–93 & n.26 (3d Cir. 2017) (explaining that "anti-vaccination beliefs" can be part of a broader religious faith and that "Christian Scientists regularly qualify for exemptions from vaccination requirements").

In this case, Leeck does likewise cite scriptural verses from the Bible in defense of her request. Unlike *Yoder*, however, it is not clear that Leeck's belief is "shared by an organized group." While Leeck's pastor submitted a letter on her behalf, his stated reason why Leeck should be exempt from the vaccine mandate is that "the long-term effects of these vaccines are uncertain," which is a purely secular or medical reason and not a religious one. Thus, it is not clear that Leeck's United Methodist Church shares her beliefs about vaccines as a group.

Nevertheless, the Supreme Court has held that "a person's belief can be religious even if it is not 'shared by all of the members of [her] religious sect.'" *Ambrose v. Gabay Ent & Assocs., P.C.*, No. CIV.A. 12-5453, 2013 WL 4195387, at *5 (E.D. Pa. Aug. 15, 2013) (quoting *Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 715–16 (1981)); *see also* 29 C.F.R. § 1605.1 ("The fact that no religious group espouses such beliefs or the fact that the religious group to which the individual professes to belong may not accept such belief will not determine whether the belief is a religious belief of the employee. . . ."). For example, in *Ambrose*, the plaintiff claimed that wearing a badge with office rules entitled "Our Ten Commandments" violated her Roman Catholic Faith. No. CIV.A. 12-5453, 2013 WL 4195387, at *1. The defendant argued that "[t]here is no deeply held Roman Catholic belief that prohibits or forbids adherents from wearing a name badge that characterizes secular guidelines as 'Our 10 Commandments.'" *Id.* at *1, *4. The court rejected the defendant's argument, reasoning that "asking the Court to determine if the plaintiff is misreading the tenets of her

10

Roman Catholic faith" would be equivalent to "asking the court to be an arbiter of scriptural interpretation," which is "not within the judicial function and judicial competence." *Id.* at *5 (cleaned up). Likewise, in this case, it is not within the Court's function or competence to assess whether Leeck misreads the tenets of her Methodist faith or whether the scripture she cites means what she thinks it does. So, even if her anti-vaccine beliefs are not shared by a religious group of which she is a part, this is not dispositive of whether her belief is religious. Instead, the Court focuses on whether Leeck's sincerely held beliefs about vaccines are religious according to *her* scheme of things. This is admittedly a difficult task for courts to do. To aid in this task, the Court relies on the criteria described above: (1) the ultimate ideas criterion; (2) the comprehensiveness criterion; and (3) the structural characteristics criterion.

With regard to the ultimate ideas criterion, Leeck's belief that a "chemical injection" may "deem my body impure in the eyes of the Lord" and her belief that some vaccines are unacceptable because they are developed with the use of aborted fetal cells both deal with life and death, right and wrong, good and evil, and man's place in the universe; therefore, they are concerned with ultimate ideas and are religious in nature. Lehigh points out that Leeck offers other reasons that are not religious. For example, that the vaccine is not "necessary for operation reasons," that it has "not been FDA approved," and that Lehigh's vaccine policies "do not align . . . with the morals, beliefs, and guidance of [Leeck's] own personally-held beliefs, morals, and spiritual guidance." The Court agrees that these reasons are more medical or political than they are religious. However, at this stage in the litigation, the presence of reasons that do not satisfy the first criterion need not negate the presence of reasons that do satisfy the criterion. At least some of Leeck's reasons satisfy the first criterion.

The comprehensiveness criterion also weighs in Leeck's favor because she holds that her beliefs about vaccinations are part of her broader Christian beliefs, and thereby that her beliefs about vaccinations are more than an isolated idea. Just as the Court found in *Yoder* that the Amish way of

11

life was inseparable from and interdependent with the Christian beliefs of the Amish insofar as the Amish justified their way of life by appeal to Biblical scripture, so likewise Leeck's beliefs about vaccination must be construed in the light most favorable to her as inseparable from and interdependent with her Christian and Methodist beliefs insofar as she also justifies her way of life, which involves not receiving vaccines, by appeal to Biblical scripture.

With regard to the structural characteristics criterion, the question of whether Leeck practices her belief about avoiding vaccination through "formal and external signs," such as holidays or ceremonies, depends again on the question of whether that belief is inseparable from and interdependent with her Christian and Methodist beliefs. If the moral teachings of Leeck's faith form a kind of seamless garment or unity, and if her beliefs about the impermissibility of receiving vaccines are a part of that unity, then the practice of her beliefs about vaccination would be bound up with the external signs of her Methodist faith. Since Ms. Leeck has asserted that her beliefs about vaccination are a part of her organized religious faith and has cited scripture and reasons beyond mere threadbare assertions, the Court accepts as true, for the purpose of adjudicating a motion to dismiss, that her belief is inseparable from and interdependent with her Christian and Methodist beliefs. It follows, therefore, that this criterion is also satisfied.

Lehigh points to a number of cases involving plaintiffs who brought Title VII claims after they refused to be vaccinated or be tested for COVID-19 or wear face masks: *Blackwell v. Lehigh Valley Health Network*, No. 5:22-CV-03360-JMG, 2023 WL 362392 (E.D. Pa. Jan. 23, 2023); *Finkbeiner v. Geisinger Clinic* 623 F. Supp. 3d 458 (M.D. Pa. 2022); *Geerlings v. Tredyffrin/Easttown Sch. Dist.* No. 21-CV-4024, 2021 WL 4399672 (E.D. Pa. Sept. 27, 2021); *Brown v. Children's Hosp. of Philadelphia*, No. CV 18-2363, 2018 WL 5884545 (E.D. Pa. Nov. 9, 2018), *aff'd*, 794 F. App'x 226 (3d Cir. 2020); and *Fallon v. Mercy Cath. Med. Ctr. of Se. Pennsylvania*, 200 F. Supp. 3d 553 (E.D. Pa. 2016), *aff'd*, 877 F.3d 487 (3d Cir. 2017). In each of the cited cases, the

plaintiffs' Title VII claims were dismissed, or their injunctive relief was denied, because the courts determined that the plaintiffs' alleged beliefs were not religious in nature. These cases, however, are not on all fours with this case.

For example, in *Fallon*, the plaintiff brought a Title VII claim against his employer for terminating him after he refused to get an influenza vaccine. The court held that the plaintiff's reasons for opposing the influenza vaccination "consist[ed] of a 'single governing idea,' best described as anti-vaccination." *Fallon*, 200 F. Supp. 3d at 561. Unlike Leeck, the plaintiff in *Fallon* was not a member of an organized religion. *Id.* at 556–57. So, while the *Fallon* court acknowledged that "anti-vaccination beliefs" can "be part of a broader religious faith," *id.* at 492–93, the court held that the plaintiff's belief was not a part of a broader religious faith and granted the defendant's motion to dismiss. Unlike the plaintiff in *Fallon*, Leeck's belief about vaccines, insofar as she alleges that it flows form the practice of the organized religion to which she belongs, is a part of a broader religious faith.

Likewise, in *Brown*, the plaintiff stated that she could not comply with her employer's requirement that all employees receive an influenza vaccine because she "could no longer go against [her] beliefs." 2018 WL 5884545, at *1. The plaintiff never stated any specific religious belief that conflicted with the mandate and only obliquely referred to the vaccine being unnecessary because of her "African Holistic Health lifestyle" and "because she scrupulously washed her hands." *Brown v. Children's Hosp. of Philadelphia*, 794 F. App'x 226, 227 (3d Cir. 2020). The Third Circuit Court of Appeals upheld the trial court's granting of a motion to dismiss because the plaintiff never stated a specific religious belief that conflicted with the vaccine requirement. Unlike the plaintiff in *Brown*, Leeck belongs to a specific Methodist church, alleges that her opposition to the vaccine stems from her religious belief, and pleads additional facts that elaborate on the nature of the opposition: e.g., that the vaccine would "deem [her] body impure in the eyes of the Lord."

In *Geerlings*, a number of parents moved for injunctive relief on behalf of their children in order to prevent the children's school from enforcing a mandatory masking policy. The court held that one of the church-going plaintiffs[4] seeking a preliminary injunction to exempt her child from the school's masking mandate had "not demonstrated that she practices keeping her face uncovered the way followers of Catholicism practice communion or those of Jewish faith practice eating unleavened bread on Passover" in part because she did not "practice it through 'formal and external signs' such as holidays, ceremonies, or clergy." *Geerlings*, 2021 WL 4399672 at *7. The court held that the belief was not religious, because it failed the definition by analogy test, and the court denied the motion for injunctive relief. Unlike the plaintiffs in *Geerlings*, who sought religious exemptions for their children from a masking mandate, Leek seeks an exemption from vaccination. Also, the *Geerlings* court acknowledged that "[i]t is not easy for me to pass on the delicate question." *Id*. Even beyond the delicate and highly case-specific factors, however, this case can be further distinguished from *Geerlings* insofar as the court in *Geerlings* had to assess the likelihood of the case's success on the merits in order to rule on a preliminary injunction, whereas in this case the Court need only assess whether the allegations taken as true would establish a cause of action. In this case, at this stage in the litigation, any "delicacy" should be resolved in Leeck's favor.

The remaining cases can be distinguished from this case for similar reasons. In sum, the significant difference is that Leeck alleges facts that, when viewed in her favor, show that although she has secular reasons for objecting to the vaccines, she also has religious reasons, too.

As has been noted, determining whether Leeck's beliefs are religious requires "circumspection" and presents "a delicate question." *See Africa*, 662 F.2d at 1031. On the other hand, "the very concept of ordered liberty precludes allowing any person a blanket privilege to make his

---

[4] The *Geerlings* court considered the claims of each of four different plaintiffs. Two of the plaintiffs attended church, and two did not.

14

own standards on matters of conduct in which society as a whole has important interests." *Id.* (cleaned up). For example, in *Finkbeiner*, the lead plaintiff, who had already been granted a religious exemption from her employer's COVID-19 vaccine mandate, alleged that her employer violated Title VII by dismissing her when she refused twice weekly COVID-19 tests, because the tests violated her "God given right to make [her] own choices." *Finkbeiner*, 623 F.Supp.3d at 463. The court held that an employee cannot simply state that she has a "God given right to make [her] own choices" in order to avoid employers' requirements for being tested for COVID-19, because such a belief is "fungible enough to cover anything that [employee] trains it on" and is thereby "a blanket privilege" *Id.* at 465.

Likewise, in *Blackwell*, the plaintiff was initially granted a religious exemption from receiving the COVID-19 vaccine on the basis that such vaccines would "defile [her] relationship with God," on the basis of her opposition to abortion, and on her belief that the vaccines would cause "foreign [mRNA]" to "embed in our [G]od-given DNA", but then the plaintiff objected to biweekly testing because "observance of her religious beliefs forbids insertion of an unwanted foreign object into her body." *Blackwell*, 2023 WL 362392, at *7. The court held that the plaintiff's beliefs that "forbid[ ] insertion of an *unwanted* foreign object into her body" were, "absent further pleading regarding the religious nature of the belief, akin to asserting 'a blanket privilege'." *Id.* at *8. Accordingly, the court dismissed the plaintiff's claim without prejudice.

Unlike the plaintiffs in *Finkbeiner* and *Blackwell*, who had already been granted religious exemptions from receiving the COVID-19 vaccine, and who sought further exemptions from testing, Leeck seeks only exemption from vaccination. Furthermore, beyond assertions like those of the plaintiffs in *Finkbeiner* and *Blackwell* that amount to a blanket privilege, an employee must plead "sufficient information about the nature of the employee's beliefs in order to state a claim for Title VII religious discrimination." *Blackwell* 2023 WL 362392, at *6. In other words, to survive a motion to dismiss, it is not enough for Leeck to allege that her religion forbids the COVID-19 and influenza

15

vaccine; she must plead a little more, and she does. *See id*. at *8 (holding that absent "further pleading regarding the religious nature of the belief[,]" plaintiff's alleged beliefs amounted to a "blanket privilege" for avoiding all unwanted obligations). Leeck alleges additional facts about her religious beliefs that raise it above a "blanket privilege." For example, Leeck alleges that the vaccines would make her "body impure in the eyes of the Lord." She also alleges that she opposes abortions for religious reasons and therefore opposes the COVID-19 vaccine because it is developed using aborted human fetal cells.

For the above reasons, Leeck's Title VII claim survives Lehigh's Motion to Dismiss.

### B. Pennsylvania Human Relations Act

The same analysis is applied to both Title VII claims and PHRA claims. *See Finkbeiner*, 623 F. Supp. at 465 n. 27 ("claims under Title VII and the Pennsylvania Human Relations Act are coextensive and are thus considered under the same framework").

Just as a court can consider a Title VII claim only after the employee has exhausted his administrative remedies by filing with the EEOC, a court can only consider a claim under the PHRA after the employee has exhausted his administrative remedy by filing a complaint with the PHRC. *Federoff*, 571 F. Supp. 3d at 391. Where the plaintiff fails to exhaust his administrative remedy by first filing with the PHRC, the court lacks subject matter jurisdiction to hear the employee's discrimination claim. *Rugg v. Green Acres Contracting Co.,* 55 Pa. D. & C.4th 149, 159 (Com. Pl. 2001) ("[F]ailure to exhaust one's remedies under the Pennsylvania Human Relations Act precludes the court from exercising jurisdiction over a party's claim under the Act . . . ."). Even after filing with the EEOC, an employee must take separate action to file with the PHRC to exhaust administrative remedies before filing a PHRA claim. *Booker v. Nat'l R.R. Passenger Corp.,* 880 F. Supp. 2d 575, 586 (E.D. Pa. 2012).

In this case, Leeck has not alleged that she filed a complaint with the PHRC or received notice from the PHRC. As a result, this Court does not have subject matter jurisdiction over her PHRA claim, and so the Court dismisses the PHRA claim sua sponte but without prejudice. *See Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76–77 (3d Cir.2003) (holding that courts have a duty to raise jurisdiction issues when in doubt and may dismiss claims sua sponte when lacking subject matter jurisdiction).[5]

## V. CONCLUSION

The Court denies Lehigh's motion to dismiss Leeck's Title VII claim, because Leeck has alleged sufficient facts to give rise to a plausible claim for religious discrimination. However, the Court dismisses Leeck's PHRA claim sua sponte and without prejudice for want of subject matter jurisdiction, because she did not allege that she exhausted her PHRC remedy before filing her Second Amended Complaint.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[5] Leeck alleges that this Court has supplemental jurisdiction over her PHRA claim. But a state court would have jurisdiction of her PHRA claim only after she filed with the PHRC. It follows then that this Court cannot have jurisdiction over this claim unless a state court would.